# IN THE COURT OF APPEALS OF IOWA

No. 24-1542
Filed January 9, 2025

**IN THE INTEREST OF J.S.,**
**Minor Child,**

**J.S., Father,**
        Appellant.

_____

Appeal from the Iowa District Court for Polk County, Lynn Poschner, Judge.

A father appeals the termination of parental rights to his child. **AFFIRMED.**

Cathleen J. Siebrecht of Siebrecht Law Firm, Pleasant Hill, for appellant father.

Brenna Bird, Attorney General, and Michelle R. Becker, Assistant Attorney General, for appellee State.

Erin E. Romar of Youth Law Center, Des Moines, attorney and guardian ad litem for minor child.

Considered by Greer, P.J., and Buller and Langholz, JJ.

**BULLER, Judge.**

The father appeals termination of his parental rights to J.S. (born 2019).  His petition on appeal contains one adequately developed claim, concerning denial of his request for additional time.  We agree with the juvenile court that the father did not carry his burden to prove he could resume custody and care of the child within six months based on the speculative nature of his parole and placement in a supervised-living facility, his poor track record of safety and sobriety, and the child's need for permanency.

**Background Facts and Proceedings.**  The child came to the attention of the Iowa Department of Health and Human Services (HHS) while living with the mother (whose rights are not at issue in this appeal).  To make a long story short, the family has a lengthy history with HHS, and most recently came to the department's attention when an apartment manager saw marijuana and paraphernalia in the home.  The home was also "infested" with mice and roaches.  The child and a sibling were adjudicated in need of assistance.

The father has been incarcerated throughout the entirety of the juvenile proceedings.  His problems with substance abuse and violence date back twenty-five years.  In 2019, a child-abuse report was founded against him for using methamphetamine in the home and leaving the child's sibling unattended in a parking lot.  The father has been imprisoned a total of six times, and his criminal history includes drug charges, violation of protective orders, domestic violence, non-domestic assault, burglary, theft, interference with official acts, harassment of a public official or employee, and strangulation.  In the father's words, he had been convicted of domestic-abuse offenses "quite a few" times, and some of these were

directed at the mother. He had completed batterer's education (now known as the Iowa Domestic Abuse Program—IDAP) four times and gone on to offend again each time. At trial, he described engaging with additional programming and treatment while incarcerated.

HHS and social workers arranged virtual and in-person visits between the father and the child, but not as often as the father or HHS hoped. The record is not entirely clear on why, but it seems part of the blame lies with scheduling at the prison and part with the father using half of his available in-person visit times to see his girlfriend instead of the child. When visits were scheduled, the father attended; he also sent the child letters and pictures. But HHS expressed some concerns that the father's emotional volatility during visits was not good for the child and led to negative behaviors.

According to the father, he expected to be released on parole to a supervised living facility within thirty to forty days after trial. The release program he was originally seeking to participate in had six months to one year of programming and would not allow children to live with him. On the third day of trial, his plan changed allegedly based on financing issues, and he was looking at a program he could complete "within four to six months and be home, be out of there." Under questioning by the child's guardian ad litem (GAL), the father admitted that it was in his best interest to delay termination until his parole—not in the child's best interest.

The child and sibling were well cared for in a pre-adoptive foster placement, where they had been for approximately seventeen months as of trial. The child saw a therapist who informed the court the child needed permanency and had

grown attached to the foster family. The HHS worker assigned to the case offered a similar opinion.

The juvenile court found the father's stability and sobriety in the community was unproven and that his "history is not reassuring." The court found the father would not be able to take custody of the child within six months:

> [The father] has a plan for release, but his plan is not in action yet. He has been accepted into three-quarter house and hopes to be released to parole at the three-quarter house in four to six weeks. He then would live in the three-quarter house for several months. Even if he was immediately released to a facility where children can live with their parents, his history of incarceration and drug use means that he will need to prove his safety and sobriety in the community much longer than six months to safely have custody of the child[ ].

The county attorney, HHS, and the child's GAL all recommended termination of parental rights. The court terminated the father's rights under Iowa Code section 232.116(1)(f) (2024) and denied his request for additional time. The father appeals, and we review de novo. *See In re W.M.*, 957 N.W.2d 305, 312 (Iowa 2021). The mother's rights were also terminated, but she does not appeal.

**Additional Time.** The only issue substantively briefed by the father on appeal is his claim that the juvenile court should have granted him additional time. "[T]he juvenile court may deny termination and give the parent an additional six months for reunification only if the need for removal 'will no longer exist at the end of the additional six-month period.'" *In re W.T.*, 967 N.W.2d 315, 323 (Iowa 2021) (quoting Iowa Code § 232.104(2)(b)). And the parent bears the burden to make that showing. *Id.* at 322–24.

We conclude the father did not carry his burden here. We agree with the juvenile court that the father's plan for release was largely speculative, his track

record did not bode well for maintaining sobriety or safety in the community, and he had no realistic plan to safely reunify with the child within six months. Even taking the father at his best-case scenario, he needed to complete four to six months of programming before he would be released into the community, and there is no reasonable prospect the remainder of the additional six months after that would be sufficient to resume care of the child.

"It is well-settled law that we cannot deprive a child of permanency after the State has proved a ground for termination . . . by hoping someday a parent will learn to be a parent and be able to provide a stable home for the child." *In re P.L.*, 778 N.W.2d 33, 41 (Iowa 2010). While we hope the father achieves safety and sobriety, we cannot say he will do so in six months, and the child's need for permanency strongly supports termination.

**Other Issues.** The State flags scattered statements in the father's petition on appeal that potentially touch on other issues, arguing the father did not adequately brief the issues or cite legal authority so as to invoke appellate review. *See* Iowa Rs. App. P. 6.201(1)(d), .1401–Form 5; *In re K.D.*, No. 21-0581, 2021 WL 3897419, at *2 (Iowa Ct. App. Sept. 1, 2021) (discussing these rules). "[A]s we have held before, 'sprinkled mentions of an issue' are insufficient to raise legal claims for our consideration." *In re K.P.*, No. 23-1661, 2024 WL 260885, at *3 (Iowa Ct. App. Jan. 24, 2024) (citation omitted). To the extent the father's petition on appeal makes passing reference to other claims, these scattered references are insufficient to invoke appellate review. *See Inghram v. Dairyland Mut. Ins.*, 215 N.W.2d 239, 240 (Iowa 1974). We also have some doubt as to whether all of these potential issues were preserved for our review. But in the interest of

completeness, we note we have reviewed the entire record and do not disagree with the juvenile court's findings on the statutory elements, best interests, or the permissive exceptions. In other words, even if the issues were adequately briefed and preserved, we would not reverse termination of the father's parental rights.

**AFFIRMED.**